1294907-392

# GREEN CAPITAL FUNDING, LLC

116 Nassau Street, Suite 804, New York, NY 10038

### FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT

This agreement (this "Agreement"), dated 11/27/2018, between GREEN CAPITAL FUNDING, LLC ("GCF") and the seller(s) listed herein (collectively, the "Seller") (all capitalized terms shall have the meanings ascribed to them below):
**Business Legal Name:** FTE NETWORKS, INC. and the entities listed on "Exhibit B"
**D/B/A:** FTE NETWORKS and the entities listed on "Exhibit B"
**Form of Business Entity:** Corporation       EIN #: ███████
**Physical Address:** 999 VANDERBILT BEACH RD STE 601, NAPLES, FL 34108
**Mailing Address:** 999 VANDERBILT BEACH RD STE 601, NAPLES, FL 34108

| PURCHASE PRICE: | PURCHASED AMOUNT: | SPECIFIED PERCENTAGE: | INITIAL DAILY INSTALLMENT: |
|---|---|---|---|
| $ 600,000.00 | $ 959,400.00 | 25 % | $ 24,999.00 |

**FOR THE SELLER #1**

By: _____
Name: DAVID SCOTT LETHEM
Title: Owner/Agent/Manager
Email:
Business Phone:

**FOR THE SELLER #2**

By: _____
Name: MICHAEL C PALLESCHI
Title: Owner/Agent/Manager
Email:
Business Phone:

*Accurate contact information is required to provide the Seller with important information regarding the Agreement.

Concurrently with the execution of this Agreement by Seller, and as condition to the effectiveness hereof, Seller has caused the **Personal Guarantee of Performance** in the form attached hereto as "Exhibit A" (the "Guaranty") to be signed and delivered to GCF by the following Owner(s)/Guarantor(s) of Seller.

**OWNER/GUARANTOR #1**

By: _____
Name: DAVID SCOTT LETHEM
SSN ███████
Phone ███████
Address: 12357 ROCK RIDGE LANE, FORT MYERS, FL 33913

**OWNER/GUARANTOR #2**

By: _____
Name: MICHAEL C PALLESCHI
SSN ███████
Phone ███████
Address: 1464 PALMA BLANCA COURT, NAPLES, FL 34119

Furthermore, in the event the Seller and/or Guarantor are comprised of more than one entity and/or individuals, then ALL such entities and/or individuals, respectively, shall sign the Addendum to this Agreement in the form attached hereto as Exhibit B (the "Addendum").

**WHEREAS**, Seller is desirous to sell to GCF, and GCF is desirous to purchase from Seller a Specified Percentage of the Seller's Future Receipts, but only on the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the mutual receipts and sufficiency of which is hereby acknowledged by both parties, GCF and Seller hereby agree to the foregoing and as follows:

**1. Basic Terms and Definitions**.

    a. "Effective Date" shall mean the later of: (i) the date set forth in the preamble to this Agreement, and (ii) the date when GCF paid the Purchase Price to Seller.

    b. "Specified Percentage" shall mean TWENTY FIVE PERCENT (25%) of each and every sum from sale made by Seller of Future Receipts.

    c. "Future Receipts" shall mean, collectively, all of Seller's receipts of monies for the sale of its goods and services that monies shall be paid and delivered to Seller by Seller's customers and/or other vendees after the Effective Date of this Agreement; which payments or deliveries of monies can be made in the form of cash, check, credit, charge, or debit card, ACH or other electronic transfer or any other form of monetary payment and/or pecuniary benefit received by Seller.

    d. "Daily Receipts" shall mean the amount of Future Receipts received by Seller on a daily basis.

    e. "Purchased Amount" shall mean the total amount of the Specified Percentage of the Future Receipts that Seller shall be under obligation to deliver and pay over to GCF pursuant to this Agreement. The parties agree that the Purchased Amount shall be $959,400.00.

Guarantor #1 Initials: [ ~ ]    Guarantor #2 Initials: [ ~ ]

**EXHIBIT 8**

1294907-392

**f.** "<u>Purchase Price</u>" shall mean the total amount that GCF agrees to pay for the Purchased Amount. Note that the amount that Seller will actually receive from GCF pursuant to this Agreement will be less than the Purchase Price by the total sum of the Applicable Fees, Prior Balance and the Origination Fee, if any, as set forth in subparagraphs i., j. and k. below. The parties agree that the Purchase Price shall be $600,000.00.

**g.** "<u>Initial Daily Installment</u>" shall mean the fixed amount that Seller and GCF agree to be a good faith approximation of the Specified Percentage of Seller's Daily Future Receipts. Seller and GCF further agree that, based upon the information provided by Seller to GCF concerning Seller's most recent accounts receivables, including representations by the Seller to GCF regarding the Seller's estimated Future Receipts, and subject to Seller's right of adjustment/reconciliation set forth in this Agreement, as of the Effective Date the Initial Daily Installment shall be $24,999.00.

**h.** "<u>Workday</u>" shall mean Monday through Friday except on days when banking institutions are closed for the holidays and do not process ACH payments.

**i.** "<u>Applicable Fees</u>" shall mean, collectively, all initial costs and fees that Seller agrees to pay to GCF as consideration for agreeing to enter into this Agreement and that are described in Section 17 of this Agreement. The total sum of the Applicable Fees will be deducted from the Purchase Price prior to delivering it to Seller pursuant to Seller's authorization set forth in Rider 1 to this Agreement, provided nevertheless that such deduction shall not be deemed to reduce the agreed upon Purchase Price.

**j.** "<u>Prior Balance</u>" shall mean the sum of all amounts that Seller may owe to GCF and/or third party(s) as of the Effective Date of this Agreement. The Prior Balance, if any, is described in Section 18 of this Agreement and will be deducted from the Purchase Price prior to delivering it to Seller pursuant to Seller's authorization set forth in Rider 2 to this Agreement, provided nevertheless that such deduction shall not be deemed to reduce the agreed upon Purchase Price.

**k.** "<u>Origination Fee</u>" shall mean the fee that Seller and a Broker have agreed to in conjunction with brokering this Agreement, which amount Seller authorizes GCF to withhold from the Purchase Price and pay to said Broker. The Origination Fee, if any, is described in Section 19 of this Agreement and will be deducted from the Purchase Price prior to delivering it to Seller pursuant to Seller's authorization set forth in Rider 3 to this Agreement, provided nevertheless that such deduction shall not be deemed to reduce the agreed upon Purchase Price.

**l.** In the event "<u>Seller</u>" is comprised of more than one entity, then:

    **i.** The term "Seller" shall mean, individually and collectively, all such entities; and

    **ii.** Each Seller is an "Affiliate" of all other Seller(s). The term "Affiliate" shall mean an entity or an individual that (1) controls, (2) is under the "Control", or (3) is under common Control with the entity or individual in question. The term "Control" shall mean direct or indirect ownership of more than 50% of the outstanding voting stock of a corporation or other majority equity interest if not a corporation and the possession of power to direct or cause the direction of the management and policy of such corporation or other entity, whether through ownership of voting securities, by stature, or by contract; and

    **iii.** The representations, warranties, covenants, obligations and liabilities of each Seller shall be joint and several under this Agreement; and

    **iv.** The liability of each Seller under this Agreement shall be direct and immediate and shall not be conditional or contingent upon the pursuance of any remedies against any other person or entity; and

    **v.** The terms "Specified Percentage", "Future Receipts", "Daily Receipts", "Initial Daily Installment" shall mean the Specified Percentage, the Future Receipts and the Daily Receipts of each Seller individually; and

    **vi.** GCF may pursue its rights and remedies under this Agreement against any one or any number of entities that constitute Seller without obligation to assert, prosecute or exhaust any remedy or claim against any other Seller or any Guarantor.

**m.** In the event "<u>Guarantor</u>" is comprised of more than one individual, then:

    **i.** The term "Guarantor" shall mean, individually and collectively, all such individuals; and

    **ii.** Each Guarantor is an Affiliate of all other Guarantor(s); and

    **iii.** The representations, warranties, covenants, obligations and liabilities of each Guarantor shall be joint and several under this Agreement and the Guaranty; and

    **iv.** The liability of each Guarantor under this Agreement and the Guaranty shall be direct and immediate and shall not be conditional or contingent upon the pursuance of any remedies against any other person or entity; and

    **v.** GCF may pursue its rights and remedies under this Agreement and/or Guaranty against any one or any number of individuals that constitute Guarantor without obligation to assert, prosecute or exhaust any remedy or claim against any other Guarantor or any Seller.

**2. <u>The Term</u>.** This Agreement for the purchase and sale of Future Receipts does not have a fixed duration or term, which is potentially infinite. Subject to the provisions of Sections 10-13 hereof, the term of this Agreement shall commence on the Effective Date and expire on the date (the "<u>Expiration Date</u>") when the Purchased Amount and all other sums due to GCF pursuant to this Agreement are received by GCF in full.

    Guarantor #1 Initials: [   ]    Guarantor #2 Initials: [   ]

**3. Sale of Purchased Future Receipts**. Seller hereby sells, assigns, transfers and conveys (hereinafter, the "Sale") unto GCF all of Seller's right, title and interest in to the Specified Percentage of the Future Receipts until the Purchased Amount shall have been delivered by Seller to GCF (hereinafter, the portion of the Future Receipts sold by Seller to GCF pursuant to this Agreement, the "Purchased Future Receipts"); to have and hold the same unto GCF, its successors and assigns, forever. This Sale of the Purchased Future Receipts is made without express or implied warranty to GCF of collectability of the Purchased Future Receipts by GCF and without recourse against Seller and/or Guarantor(s), except as specifically set forth in this Agreement. By virtue of this Agreement, Seller transfers to GCF full and complete ownership of the Purchased Future Receipts and Seller retains no legal or equitable interest therein.

**4. Payment of Purchase Price**. In consideration of the sale by Seller to GCF of the Purchased Future Receipts pursuant to this Agreement, GCF agrees to pay to Seller the Purchase Price; the amount of the Purchase Price (reduced by the Applicable Fees, Prior Balance, and Origination Fee, if any) shall be delivered to Seller after execution of this Agreement.

**5. Use of Purchase Price**. Seller hereby acknowledges that it fully understands that: (i) GCF's ability to collect the Purchased Amount (or any portion thereof) is contingent upon Seller's continued operation of its business and successful generation of the Future Receipts until the Purchased Amount is delivered to GCF in full; and (ii) that in the event of decreased efficiency or total failure of Seller's business GCF's receipt of the full or any portion of the Purchased Amount may be delayed indefinitely. Based upon the forgoing, Seller agrees to use the Purchase Price exclusively for the benefit and advancement of Seller's business operations and for no other purpose.

**6. Initial Daily Installments of Purchased Amount**. The Purchased Amount shall be delivered by Seller to GCF daily in the amount of the Initial Daily Installment on each and every Workday commencing on the Effective Date and ending on the Expiration Date.

**7. Approved Bank Account and Credit Card Processor**. During the term of this Agreement, Seller shall: (i) deposit all Future Receipts into one (and only one) bank account which bank account shall be acceptable and preapproved by GCF (the "Approved Bank Account"), (ii) use one (and only one) credit card processor which processor shall be acceptable and preapproved by GCF (the "Approved Processor") and (iii) deposit all credit card receipts into the Approved Bank Account. In the event the Approved Bank Account or Approved Processor shall become unavailable or shall cease providing services to Seller during the term of this Agreement, prior to the first date of such unavailability or cessation of services, Seller shall arrange for another Approved Bank Account or Approved Processor, as the case may be.

**8. Authorization to Debit Approved Bank Account**. Seller hereby authorizes GCF to initiate electronic checks or ACH debits from the Approved Bank Account (which as of the Effective Date of this Agreement shall be the account listed below) in the amount of the Initial Daily Installment on each Workday commencing on the Effective Date until GCF receives the full Purchased Amount;

\*Seller shall provide GCF with all access code(s) for the Approved Bank Account.

The Initial Daily Installment ~~is to be drawn via ACH payment~~ from the following bank account:

    i. Account Number

    ii. Routing Number

    iii. Account Name

    iv. Bank Name: ~~P~~

\*NOTE that this authorization is to remain in full force and effect until GCF receives written notification from Seller of its termination in such time and in such manner to afford GCF a reasonable opportunity to act on it; provided, however, that revocation of this authorization prior to remittance of the balance under the Agreement shall constitute a breach thereunder, subject to Sections 10-13 herein.

**9. Fees Associated with Debiting Approved Bank Account**. It shall be Seller's exclusive responsibility to pay to its banking institution and/or GCF's banking institution directly (or to compensate GCF, in case it is charged) all fees, charges and expenses incurred by either Seller or GCF due to rejected electronic checks or ACH debit attempts, overdrafts or rejections by Seller's banking institution of the transactions contemplated by this Agreement, including without limitation a \$35.00 charge per bounced or rejected ACH debit.

**10. Seller's Right for Reconciliation**. Seller and GCF each acknowledges and agrees that:

    **a.** If at any time during the term of this Agreement Seller will experience unforeseen decrease or increase in its Daily Receipts, Seller shall have the right, at its sole and absolute discretion, but subject to the provisions of Section 11 below, to request retroactive reconciliation of the Initial Daily Installments for one (1) full calendar month immediately preceding the day when such request for reconciliation is received by GCF (each such calendar month, a "Reconciliation Month").

    **b.** Such reconciliation (the "Reconciliation") of the Seller's Initial Daily Installment for a Reconciliation Month shall be performed by GCF within five (5) Workdays following its receipt of the Seller's request for Reconciliation by either crediting or debiting the difference back to, or from, the Approved Bank Account so that the total amount debited by GCF from the Approved Bank Account during the Reconciliation Month at issue is equal to the Specific Percentage of the Future Receipts that Seller collected during the Reconciliation Month at issue.

    **c.** One or more Reconciliation procedures performed by GCF may reduce or increase the effective Initial Daily

Guarantor #1 Initials: [ _ÔⲚ_ ]    Guarantor #2 Initials: [ _✔_ ]

1294907-392

Installment amount during the Reconciliation Month in comparison to the one set forth in Section 1 of this Agreement, and, as the result of such reduction, the term of this Agreement during which GCF will be debiting the Approved Bank Account may get shortened or extended indefinitely.

**11. Request for Reconciliation Procedure.**

**a.** It shall be Seller's sole responsibility and the right hereunder to initiate Reconciliation of Seller's actual Initial Daily Installments during any Reconciliation Month by sending a request for Reconciliation to GCF.

**b.** Any such request for Reconciliation of the Seller's Initial Daily Installments for a specific Reconciliation Month shall be in writing, shall include a copy of Seller's bank statement and credit card processing statements for the Reconciliation Month at issue, and shall be received by GCF via email to reconciliation@customerinfoportal.com, with the subject line "REQUEST FOR RECONCILIATION," within five (5) Workdays after the last day of the Reconciliation Month at issue (time being of the essence as to the last day of the period during which such demand for Reconciliation shall be received by GCF).

**c.** GCF's receipt of Seller's request for Reconciliation after the expiration of the five (5) Workday period following the last day of the Reconciliation Month for which such Reconciliation is requested nullifies and makes obsolete Seller's request for Reconciliation for that specific Reconciliation Month.

**d.** Seller shall have the right to request Reconciliation as many times during the term of this Agreement as it deems proper, and GCF shall comply with each such request, provided that:

**i.** Each such request is made in accordance with the terms of this Section 11; and

**ii.** If a request for Reconciliation is made after the expiration of the term of this Agreement and, as the result of such Reconciliation, the total amount actually debited by GCF from the Approved Bank Account will become less than the Purchased Amount, then and in such event the term of this Agreement shall automatically be extended until the time when the total amount actually debited from Approved Bank Account pursuant to this Agreement shall become equal to the Purchased Amount.

**e.** Nothing set forth in Sections 10 or 11 of this Agreement shall be deemed to: (i) provide Seller with the right to interfere with GCF's right and ability to debit the Approved Bank Account while the request for Reconciliation of Seller's receipts is pending or until the Purchased Amount is collected by GCF in full, or (ii) modify the amount of the Initial Daily Installment for any calendar month during the term of this Agreement other than during the Reconciliation Month(s) as the result of the Reconciliation.

**12. Adjustment of the Initial Daily Installment**. Seller and GCF each acknowledge and agree that:

**a.** If at any time during the term of this Agreement Seller experiences a steady decrease in its Daily Receipts, Seller shall have the right, at its sole and absolute discretion, but subject to the provisions of Section 13 below, to request modification ("Adjustment") of the amount of the Initial Daily Installment that Seller is obligated to deliver daily to GCF in accordance with the provisions of Section 6 above. Such Adjustment shall become effective as of the date it is granted and the new adjusted amount of the Initial Daily Installment (the "Adjusted Daily Installment") shall replace and supersede the amount of the Initial Daily Installment set forth in Section 1 above.

**b.** The Adjustment of the Initial Daily Installment shall be performed by GCF within five (5) Workdays following its receipt of the Seller's request for Adjustment by modifying the amount of the Initial Daily Installment that shall be debited from the Approved Bank Account until the Purchased Amount is paid in full. Notwithstanding anything to the contrary set forth in Sections 12 and 13 hereof, no Adjustment shall take place until and unless Reconciliation for at least one (1) Reconciliation Month takes place resulting in the reduction of the total amount debited from Seller's Approved Bank Account during the Reconciliation Month by at least fifteen percent (15%) in comparison to the amount that would have been debited during that month without Reconciliation.

**c.** One or more Adjustments performed by GCF may substantially extend the term of this Agreement.

**13. Request for Adjustment Procedure.**

**a.** It shall be Seller's sole responsibility and the right to initiate the Adjustment by sending a request for Adjustment to GCF.

**b.** A request for Adjustment (an "Adjustment Request") shall be in writing, and shall include copies of: (i) Seller's last three (3) consecutive bank statements of the Approved Bank Account and credit card processing statements immediately preceding the date of GCF's receipt of the Adjustment Request, and (ii) Seller's bank statements and credit card processing statements previously provided by Seller to GCF based upon which statements the amount of the Initial Daily Installment set forth in Section 1 above (or the then current Adjusted Daily Installment, as the case may be) was determined, and shall be received by GCF by email at adjustment@customerinfoportal.com, with the subject line "REQUEST FOR ADJUSTMENT," within five (5) Workdays after the date that is the later of (i) the last day of the latest bank statement enclosed with the Adjustment Request and (ii) the last date of the latest credit card processing statement enclosed with the Adjustment Request (time being of the essence as to the last day of the period during which an Adjustment Request shall be received by GCF).

**c.** GCF's receipt of a Seller's Adjustment Request after the expiration of the above referenced five (5) Workday period nullifies and makes obsolete such Adjustment Request.

**d.** Seller shall have the right to request Adjustment of the Initial Daily Installment, or the Adjusted Daily Installment

Guarantor #1 Initials: [        ]          Guarantor #2 Initials: [        ]

(as the case may be), as many times during the term of this Agreement as it deems proper, and GCF shall comply in good faith with such request, provided that:

   **i.** Each such request for Adjustment is made in accordance with the terms of this Section 13; and

   **ii.** A request for Adjustment shall not be made after the Expiration Date.

   **e.** Nothing set forth in Sections 12 or 13 of this Agreement shall be deemed to provide Seller with the right to (i) interfere with GCF's right and ability to debit the Approved Bank Account while the request for Adjustment is pending or until the Purchased Amount is collected by GCF in full or (ii) request Adjustment retroactively for the portion of the term of this Agreement preceding the date of an Adjustment Request.

## 14. Seller's Right to Accelerate Remittance of the Outstanding Portion of the Purchased Amount of Future Receipts ("Outstanding PAFR").

   **a.** Notwithstanding anything to the contrary set forth in this Agreement, Seller shall have the right, at any time after receipt from GCF of the Purchase Price, and upon obtaining GCF's prior written consent, to accelerate delivery to GCF of the then undelivered portion of the Purchased Amount of Future Receipts (such amount, the "Outstanding PAFR"). The delivery of the Outstanding PAFR shall be governed by the following subparagraphs.

   **b.** The Outstanding PAFR can only be delivered in full and not partially.

   **c.** Seller shall request the right to accelerate the delivery of the Outstanding PAFR by notifying GCF to that effect; provided that such notice shall be in writing (an email delivery shall be deemed acceptable) and shall contain the information on the source(s) of the funds to be used for delivery of the Outstanding PAFR and on the approximate date of such delivery.

   **d.** GCF shall respond to Seller's request within three (3) Workdays from the date of its receipt by GCF.

   **e.** In its response to Seller's request, GCF shall indicate the exact amount of the Outstanding PAFR as of the date of its delivery by Seller.

   **f.** As of the date agreed upon as between GCF and Seller, Seller shall deliver to GCF the full amount of the Outstanding PAFR (such date, the "Accelerated Delivery Date").

   **g.** Under no circumstances shall Seller suspend or modify, or cause to be suspended or modified, the delivery to GCF of the Initial Daily Installments prior to the delivery of the Outstanding PAFR to GCF.

   **h.** Upon delivery of the Outstanding PAFR to GCF in compliance with the provisions of this Section 14, Seller's obligations to GCF pursuant to this Agreement shall be deemed completed and fulfilled.

## 15. Rights and Obligations of GCF Upon Receipt of the Outstanding PAFR. Upon receipt of the full amount of the Outstanding PAFR:

   **a.** GCF shall notify the Approved Bank Account and request from it to stop transferring Initial Daily Installments to GCF's bank account.

   **b.** If GCF shall have received one or more Initial Daily Installment (or Adjusted Daily Installments, as the case may be) after the Accelerated Delivery Date (due to the Approved Bank's delay in processing GCF's request described in subparagraph (a) above or for any other reason), GCF shall immediately do one of the two following things (but not both):

   **i.** Return to Seller the total sum of the Initial Daily Installments (or the Adjusted Daily Installments, as the case may be) received by GCF after the date of delivery of the Outstanding PAFR to GCF; or

   **ii.** Apply the total sum of the Initial Daily Installments (or the Adjusted Daily Installments, as the case may be) received by GCF after the Accelerated Delivery Date toward Seller's outstanding financial obligations to GCF existing as of the Accelerated Delivery Date for reasons unrelated to this Agreement (if any).

   **A.** By way of example, if as of the Accelerated Delivery Date, Seller and GCF would be parties to a another future receivables sale and purchase agreement in connection with a portion of Seller's Future Receipts that is not subject to this Agreement (such agreement, an "Unrelated Future Agreement"), then and in such event GCF may, in its sole and absolute discretion, apply the sum of the Initial Daily Installments (or the Adjusted Daily Installments, as the case may be) received by GCF after the Accelerated Delivery Date pursuant to this Agreement toward fulfilling Seller's obligations to GCF pursuant to the Unrelated Future Agreement.

   **c.** Seller acknowledges and agrees that GCF shall have the right to apply the total sum of the Initial Daily Installments (or Adjusted Daily Installments, as the case may be) received by GCF after the Accelerated Delivery Date toward Seller's outstanding financial obligations to GCF existing as of the Accelerated Delivery Date for reasons unrelated to this Agreement (if any) in exchange for, and as an adequate and sufficient consideration for, GCF granting Seller the right to accelerate the payment of the Purchased Amount of Future Receipts.

## 16. Risk Sharing Acknowledgments and Arrangements.

   **a.** Seller and GCF each hereby acknowledges and agrees that:

   **i.** The Purchased Future Receipts represent a portion of Seller's Future Receipts.

   **ii.** This Agreement consummates the sale of the Purchased Future Receipts at a discount, not the borrowing of funds by Seller from GCF. GCF does not charge Seller and will not collect from Seller any interest on the monies used by GCF for

Guarantor #1 Initials: [ *n* ]     Guarantor #2 Initials: [ ✓ ]

1294907-392

the purchase of the Purchased Future Receipts. The period of time that it will take GCF to collect the Purchased Amount is not fixed, is unknown to both parties as of the Effective Date of this Agreement and will depend on how well or not well Seller's business will be performing following the Effective Date. As an extreme example, in the event Seller's business ceases to exist after GCF's purchase of the Purchased Future Receipts as a result of a drying up of revenues for reasons outside Seller's control, GCF may never collect all or a substantial portion of the Purchased Future Receipts and will never recover the moneys it spent on such purchase.

     **iii**. The amount of the Initial Daily Installment set forth in Section 1 of this Agreement is calculated based upon the information concerning an average amount of Daily Receipts collected by Seller's business immediately prior to the Effective Date of this Agreement, as well as representations regarding the Seller's estimated Future Receipts, which information was provided by the Seller to GCF.

     **iv**. The amounts of Seller's future Daily Receipts may increase or decrease over time.

     **v**. If, based upon the Reconciliation and/or the Adjustment procedures described above, it will be determined that the actual daily amounts of the Specified Percentage of the Future Receipts get reduced in comparison to the amount of the Initial Daily Installment as of the Effective Date set forth in Section 1 of this Agreement, and in comparison to the amount that both Seller and GCF may have anticipated or projected because Seller's business has slowed down, or if the full Purchased Amount is not remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business (but not due to Seller's willful or negligent mishandling of its business or due to Seller's failure to comply with its obligations under this Agreement), Seller would not be in breach of or in default under this Agreement.

     **b.** **GCF's Risk Acknowledgments**. GCF agrees to purchase the Purchased Future Receipts knowing the risks that Seller's business may slow down or fail, and GCF assumes this risk based exclusively upon the information provided to it by Seller and related to the business operations of Seller's business prior to the date hereof, and upon Seller's representations, warranties and covenants contained in this Agreement that are designed to give GCF a reasonable and fair opportunity to receive the benefit of its bargain. Furthermore, GCF hereby acknowledges and agrees that Seller shall be excused from performing its obligations under this Agreement in the event Seller's business ceases its operations exclusively due to the following reasons (collectively, the "Valid Excuses"):

     **i**. adverse business conditions that occurred for reasons outside Seller's control and not due to Seller's willful or negligent mishandling of its business;

     **ii**. loss of the premises where the business operates (but not due to Seller's breach of its obligations to its landlord), provided however that Seller does not continue and/or resume business operations at another location;

     **iii**. bankruptcy of Seller; and/or

     **iv**. natural disasters or similar occurrences beyond Seller's control.

     **c.** **Application of Amounts Received by GCF**. GCF reserves the right to apply amounts received by it under this Agreement to any fees or other charges due to GCF from Seller prior to applying such amounts to reduce the outstanding amount of the Purchased Amount. Any ACH payments and/or payments which clear after the Effective Date of this Agreement shall be applied to the balance hereunder.

     **d.** **Not a Loan**. Seller and GCF agree that the Purchase Price is paid to Seller in consideration for the acquisition of the Purchased Future Receipts and that payment of the Purchase Price by GCF is not intended to be, nor shall it be construed as, a loan from GCF to Seller that requires absolute and unconditional repayment on a maturity date. To the contrary, GCF's ability to receive the Purchased Amount pursuant to this Agreement, and the date when the Purchased Amount is delivered to GCF in full (if ever) are subject to and conditioned upon performance of Seller's business. If, nevertheless, a court having jurisdiction over this Agreement and the parties hereto shall have determined that GCF has charged or received interest hereunder in excess of the highest rate allowed by law, then the rate of such interest received by GCF shall automatically be reduced to the maximum rate permitted by applicable law and GCF shall promptly refund to Seller any interest received by GCF in excess of the maximum lawful rate.

**17.** **Applicable Fees**. Seller acknowledges that the Applicable Fees were agreed upon between Seller and GCF prior to Seller entering into this Agreement, were subject to arm-length negotiation between GCF and Seller, and a detailed list of the Applicable Fees is set forth in Rider 1 of this Agreement, which is attached hereto and made a part hereof.

**18.** **Prior Balance.** Seller represents and warrants that Rider 2, which is attached hereto and made a part hereof, contains true and correct information as to the name(s) of Seller's creditors and the amounts that Seller owes each of those creditors as of the Effective Date (and these amounts being a portion of the Prior Balance), and that as of the date hereof there are no creditors of Seller which may otherwise encumber the Purchased Future Receipts other than those listed in Rider 2. Seller indemnifies and holds harmless GCF for any and all damages and losses (including without limitation legal fees and expenses) incurred by GCF as the result of such representation being untrue, incorrect or incomplete.

**19.** **Origination Fee**. To the extent that Seller has agreed to a broker fee with a third-party broker with respect to this Agreement (which is not a party hereto), Seller hereby requests and agrees for GCF to withhold from the Purchase Price, and pay to the third-party broker associated with this Agreement, the Origination Fee contained in Rider 3, which is attached hereto and made a part hereof.

     Guarantor #1 Initials: [ *M* ]     Guarantor #2 Initials: [ ✓ ]

1294907-392

**20. No Reduction of Purchase Price.** Seller hereby: (i) agrees to pay the Applicable Fee, the Prior Balance and the Origination Fee (the sum of those, hereinafter, the "Closing Costs") in full; (ii) hereby authorizes GCF to apply a portion of the Purchase Price due to Seller pursuant to this Agreement toward satisfaction of Seller's obligation to pay the Closing Costs by deducting the amount of the Agreement Fees from the Purchase Price prior to delivering it to Seller; and (iii) agrees that deduction of the Closing Costs from the Purchase Price shall not be deemed to be a reduction of the Purchase Price.

## REPRESENTATIONS, WARRANTIES AND COVENANTS

**21.** Seller represents, warrants and covenants that as of this date and during the term of this Agreement:

**a. Financial Condition and Financial Information.** Seller's bank and financial statements, copies of which have been furnished to GCF, and future statements which may be furnished hereafter pursuant to this Agreement or upon GCF's request, fairly represent the financial condition of Seller as of the dates such statements were issued, and prior to execution of the Agreement there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Seller. Seller has a continuing, affirmative obligation to advise GCF of any material adverse change in its financial condition, operation or ownership, and/or online banking log-in credentials. GCF may request Seller's bank statements at any time during the term of this Agreement and Seller shall provide them to GCF within five (5) Workdays. Seller's failure to do so, and/or cutting off GCF's online access to the Approved Bank Account, is a material breach of this Agreement.

**b. Governmental Approvals.** Seller is in compliance and, during the term of this Agreement, shall be in compliance with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

**c. Good Standing.** Seller is a corporation/limited liability company/limited partnership/other type of entity that is in good standing and duly incorporated or otherwise organized and validly existing under the laws of its jurisdiction of incorporation or organization, and has full power and authority necessary to carry its business as it is now being conducted.

**d. Authorization.** Seller has all requisite power to execute, deliver and perform this Agreement and consummate the transactions contemplated hereunder; entering into this Agreement will not result in breach or violation of, or default under, any agreement or instrument by which Seller is bound or any statute, rule, regulation, order or other law to which Seller is subject, nor require the obtaining of any consent, approval, permit or license from any governmental authority having jurisdiction over Seller. All organizational and other proceedings required to be taken by Seller to authorize the execution, delivery and performance of this Agreement have been taken. The person signing this Agreement on behalf of Seller has full power and authority to bind Seller to perform its obligations under this Agreement.

**e. Accounting Records and Tax Returns.** Seller will treat receipt of the Purchase Price and payment of the Purchased Amount in a manner evidencing sale of its future receipts in its accounting records and tax returns and further agrees that GCF is entitled to audit Seller's accounting records upon reasonable notice in order to verify compliance. Seller hereby waives any rights of privacy, confidentiality or taxpayer privilege in any litigation or arbitration arising out of this Agreement in which Seller asserts that this transaction is anything other than a sale of future receipts.

**f. Taxes; Workers Compensation Insurance.** Seller has paid and will promptly pay, when due, all taxes, including without limitation, income, employment, sales and use taxes, imposed upon Seller's business by law, and will maintain workers compensation insurance required by applicable governmental authorities.

**g. Business Insurance.** Seller maintains and will maintain general liability and business-interruption insurance naming GCF as loss payee and additional insured in the amounts and against risks as are satisfactory to GCF and shall provide GCF proof of such insurance upon request.

**h. Electronic Check Processing Agreement.** Seller shall not change its Approved Processor, add terminals, change its Approved Bank Account(s) or take any other action that could have any adverse effect upon Seller's obligations or impede GCF's rights under this Agreement, without GCF's prior written consent.

**i. No Diversion of Future Receipts.** Seller shall not allow any event to occur that would cause a diversion of any portion of Seller's Future Receipts from the Approved Bank Account or Approved Processor without GCF's written permission.

**j. Change of Name or Location.** Seller, any successor-in-interest of Seller, and Guarantor shall not conduct Seller's businesses under any name other than as disclosed to the Approved Processor and GCF, shall not change and/or transfer ownership in/of the Seller and will not change any of its places of business without first obtaining GCF's written consent.

**k. Prohibited Business Transactions.** Seller shall not: (i) transfer or sell all or substantially all of its assets (including without limitation the Collateral (as such term is defined in Section 22) or any portion thereof) without first obtaining GCF's consent; or (ii) make or send notice of its intended bulk sale or transfer.

**l. No Closing of Business.** Seller will not sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without first: (i) obtaining the express written consent of GCF, and (ii) providing GCF with a written agreement of a purchaser or transferee of Seller's business or assets to assume all of Seller's obligations under this Agreement pursuant to documentation satisfactory to GCF. Seller represents that it has no current plans to close its business either temporarily (for renovations, repairs or any other purpose), or permanently. Seller agrees that until GCF shall have received the Purchased Amount in full, Seller will not voluntarily close its business on a permanent or temporarily basis for renovations, repairs, or any other purposes. Notwithstanding the foregoing, Seller shall have the right to close its business temporarily if such closing is necessitated by a requirement to conduct renovations or repairs imposed upon Seller's business by legal authorities having jurisdiction over Seller's business (such as from a health department or fire department), or if such closing is necessitated by circumstances outside Seller's reasonable control. Prior to any such temporary closure of its business, Seller

Guarantor #1 Initials: [ _M_ ]     Guarantor #2 Initials: [ _M_ ]

1294907-392

shall provide GCF ten (10) business days advance notice.

**m. No Pending Bankruptcy.** As of the date of Seller's execution of this Agreement, Seller is not insolvent, has not filed, and does not contemplate filing, any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary bankruptcy petition brought or pending against Seller. Seller represents that it has not consulted with a bankruptcy attorney on the issue of filing bankruptcy or some other insolvency proceeding within six months immediately preceding the date of this Agreement.

**n. Estoppel Certificate.** Seller will at any time, and from time to time, upon at least one (1) day's prior notice from GCF to Seller, execute, acknowledge and deliver to GCF and/or to any other person or entity specified by GCF, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modification(s) and stating the date(s) on which the Purchased Amount or any portion thereof has been repaid.

**o. Unencumbered Future Receipts.** Seller has and will continue to have good, complete and marketable title to all Future Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests other than by virtue or entering into this Agreement. Seller specifically warrants and represents that it is not currently bound by the terms of any future receivables and/or factoring agreement which may encumber in any way the Future Receipts.

**p. No Stacking.** Seller shall not further encumber the Future Receipts, without first obtaining written consent of GCF.

**q. Business Purpose.** Seller is entering into this Agreement solely for business purposes and not as a consumer for personal, family or household purposes.

**r. No Default Under Contracts with Third Parties.** Seller's execution of and/or performance of its obligations under this Agreement will not cause or create an event of default by Seller under any contract, which Seller is or may become a party to.

**s. Right of Access.** In order to ensure Seller's compliance with the terms of this Agreement, Seller hereby grants GCF the right to enter, without notice, the premises of Seller's business for the purpose of inspecting and checking Seller's transaction processing terminals to ensure the terminals are properly programmed to submit and/or batch Seller's daily receipts to the Approved Processor and to ensure that Seller has not violated any other provision of this Agreement. Furthermore, Seller hereby grants GCF and its employees and consultants access to Seller's employees and records and all other items of property located at the Seller's place of business during the term of this Agreement. Seller hereby agrees to provide GCF, upon request, all and any information concerning Seller's business operations, banking relationships, names and contact information of Seller's suppliers, vendors and landlord(s), to allow GCF to interview any of those parties.

**t. Phone Recordings and Contact.** Seller agrees that any call between Seller and GCF and its owners, managers, employees and agents may be recorded and/or monitored. Furthermore, Seller acknowledges and agrees that: (i) it has an established business relationship with GCF, its managers, employees and agents (collectively, the "GCF Parties") and that Seller may be contacted by any of the GCF Parties from time-to-time regarding Seller's performance of its obligations under this Agreement or regarding other business transactions; (ii) it will not claim that such communications and contacts are unsolicited or inconvenient; and (iii) any such contact may be made by any of the GCF Parties in person or at any phone number (including mobile phone number), email addresses, or facsimile number belonging to Seller's office, or its owners, managers, officers, or employees.

**u. Knowledge and Experience of Decision Makers.** The persons authorized to make management and financial decisions on behalf Seller with respect to this Agreement have such knowledge, experience and skill in financial and business matters in general and with respect to transactions of a nature similar to the one contemplated by this Agreement so as to be capable of evaluating the merits and risks of, and making an informed business decision with regard to, Seller entering into this Agreement.

**v. Seller's Due Diligence.** The person authorized to sign this Agreement on behalf of Seller: (i) has received all information that such person deemed necessary to make an informed decision with respect to a transaction contemplated by this Agreement; and (ii) has had unrestricted opportunity to make such investigation as such person desired pertaining to the transaction contemplated by this Agreement and verify any such information furnished to him or her by GCF.

**w. Consultation with Counsel.** The person(s) signing this Agreement of behalf of Seller: (a) has read and fully understands the content of this Agreement; (b) has consulted to the extent he/she wished with Seller's own counsel in connection with the entering into this Agreement; (c) has made sufficient investigation and inquiry to determine whether this Agreement is fair and reasonable to Seller, and whether this Agreement adequately reflects his or her understanding of its terms.

**x. GCF's Consent.** Seller agrees that in every instance where Seller's rights under this Agreement are contingent upon first obtaining GCF's consent, such consent may be withheld, granted or conditioned at GCF's sole and absolute discretion.

**y. No Reliance on Oral Representations.** This Agreement contains the entire agreement between Seller and GCF with respect to the subject matter of this Agreement, and supersedes each course of conduct previously pursued or acquiesced in, and each oral agreement and representation previously made, by GCF or any of the GCF Parties with respect thereto (if any), whether or not relied or acted upon. No course of performance or other conduct subsequently pursued or acquiesced in, and no oral agreement or representation subsequently made, by the GCF Parties, whether or not relied or acted upon, and no usage of trade, whether or not relied or acted upon, shall amend this Agreement or impair or otherwise affect Seller's obligations

 Guarantor #1 Initials: [ _M_ ]    Guarantor #2 Initials: [ ✓ ]

1294907-392

pursuant to this Agreement or any rights and remedies of the parties to this Agreement.

    **z. No Additional Fees Charged.** Seller hereby acknowledges and agrees that: (i) other than the Closing Costs, if any, set forth in Sections 17-19 herein, GCF is NOT CHARGING ANY ADDITIONAL FEES OR CLOSING COSTS to Seller; and (ii) if Seller is charged with any fee and/or cost not listed in Sections 17-19 hereof, such fee is not charged by GCF. Moreover, as all working capital received under this Agreement is required to ensure Seller's continued success, Seller warrants and covenants not to pay any fee and/or commission with regard to this transaction other than as provided for herein.

## PLEDGE OF SECURITY

**22. Pledge.** As security for the prompt and complete payment and performance of any and all liabilities, obligations, covenants or agreements of Seller under this Agreement (and any future amendments of this Agreement, if any) (hereinafter referred to collectively as the "Obligations"), Seller hereby pledges, assigns and hypothecates to GCF (collectively, "Pledge") and grants to GCF a continuing, perfected and first priority lien upon and security interest in, to and under all of Seller's right, title and interest in and to the following (collectively, the "Collateral"), whether now existing or hereafter from time to time acquired:

    **a.** all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Seller; and

    **b.** all Seller's proceeds, as such term is defined by Article 9 of the UCC.

**23. Termination of Pledge.** Upon the payment and performance by Seller in full of the Obligations, the security interest in the Collateral pursuant to this Pledge shall automatically terminate without any further act of either party being required, and all rights to the Collateral shall revert to Seller. Upon any such termination, GCF will execute, acknowledge (where applicable) and deliver such satisfactions, releases and termination statements, as Seller shall reasonably request.

**24. Representations with Respect to Collateral.** Seller hereby represents and warrants to GCF that the execution, delivery and performance by Seller of this Pledge, and the remedies in respect of the Collateral under this Pledge (i) have been duly authorized; (ii) do not require the approval of any governmental authority or other third party or require any action of, or filing with, any governmental authority or other third party to authorize same (other than the filing of the UCC-1s); and (iii) do not and shall not (A) violate or result in the breach of any provision of law or regulation, any order or decree of any court or other governmental authority, and/or (B) violate, result in the breach of or constitute a default under or conflict with any indenture, mortgage, deed of trust, agreement or any other instrument to which Seller is a party or by which any of Seller's assets (including, without limitation, the Collateral) are bound.

**25. Further Assurances.** Upon the request of GCF, Seller, at Seller's sole cost and expense, shall execute and deliver all such further UCC-1s, continuation statements, assurances and assignments of the Collateral and consents with respect to the pledge of the Collateral and the execution of this Pledge, and shall execute and deliver such further instruments, agreements and other documents and do such further acts and things, as GCF may request in order to more fully effectuate the purposes of this Pledge and the assignment of the Collateral and obtain the full benefits of this Pledge and the rights and powers herein created.

**26. Attorney-in-Fact.** Seller hereby authorizes GCF at any time to take any action and to execute any instrument, including without limitation to file one or more financing statements and/or continuation statements, to evidence and perfect the security interest created hereby and irrevocably appoints GCF as its true and lawful attorney-in-fact, which power of attorney shall be coupled with an interest, with full authority in the place and stead of Seller and in the name of Seller or otherwise, from time to time, in GCF's sole and absolute discretion, including without limitation (a) for the purpose of executing such statements in the name of and on behalf of Seller, and thereafter filing any such financing and/or continuation statements, and (b) to receive, endorse and collect all instruments made payable to Seller.

## EVENTS OF DEFAULT AND REMEDIES

**27. Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" by Seller:

    **a.** Seller shall violate any term, condition or covenant in this Agreement governing Seller's obligations of timely delivery and in full of Initial Daily Installments (or Adjusted Daily Installments, as the case may be) to GCF, and timely and in full payment to GCF of any other sums due for any reason whatsoever other than as the result of Seller's business ceasing its operations exclusively due to any of the Valid Excuses.

    **b.** Any representation or warranty by Seller made in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made.

    **c.** Seller shall default under any of the terms, covenants and conditions of any other agreement with GCF(if any) which is related to the instant Agreement.

    **d.** Seller uses multiple depository accounts without obtaining prior written consent of GCF in each instance.

    **e.** Seller fails to deposit any portion of its Future Receipts into the Approved Bank Account;

    **f.** Seller changes the Approved Bank Account or Approved Processor without obtaining prior written consent of GCF in each instance.

    **g.** Seller interferes with GCF collection of Initial Daily Installments (or Adjusted Daily Installments, as the case may be).

    **h.** Four (4) or more ACH transactions attempted by GCF are rejected by Seller's bank.

    **i.** The Guaranty shall for any reason cease to be in full force and effect.

 Guarantor #1 Initials: [ ~ ]   Guarantor #2 Initials: [ ✓ ]

1294907-392

**28. Default under the Agreement**. In case any Event of Default occurs and is not waived by GCF, in writing, GCF may declare Seller in default under this Agreement without notice.

**29. Seller's Obligations Upon Default**. Upon occurrence of an Event of Default due to Seller's breach of its obligations under this Agreement, Seller shall immediately deliver to GCF the entire unpaid portion of the Purchased Amount. In addition, Seller shall also pay to GCF, as additional damages, any reasonable expenses incurred by GCF in connection with recovering the monies due to GCF from Seller pursuant to this Agreement, including without limitation the costs of retaining collection firms and reasonable attorneys' fees and disbursements (collectively, "<u>Reasonable Damages</u>"). The parties agree that GCF shall not be required to itemize or prove its Reasonable Damages and that the fair value of the Reasonable Damages shall be calculated as twenty-five percent (25%) of the undelivered portion of the Purchased Amount of Future Receipts upon the occurrence of an event of default, or twenty-five hundred dollars ($2,500.00), whichever is greater. The entire sum due to GCF pursuant to this Section 29 shall bear simple interest from the Default Payment Date until is paid in full, at the rate of 9.00% per annum (and such interest shall accrue daily).

**30. Remedies Upon Default**. Upon Seller's default, GCF may immediately proceed to protect and enforce its rights under this Agreement and/or Guaranty by:

    **a**. Enforcing its rights as a secured creditor under the Uniform Commercial Code including, without limitation, notifying any account debtor(s) of Seller as the term is defined below, of GCF's security interest;

    **b**. Enforcing the provisions of the Personal Guarantee of Performance against the Guarantor(s) without first seeking recourse from Seller;

    **c**. Filing the affidavit of confession of judgment (the "<u>Affidavit</u>"), if any, executed by the Guarantor(s), individually and on Seller's behalf, jointly and severally, in connection with this Agreement in the amount of the unpaid portion of the Purchased Amount, plus the Reasonable Damages, entering judgment with the Clerk of the Court, without notice, and executing thereon (**NOTE THAT THIS CONFESSION OF JUDGMENT PROVISION CONSTITUTES A WAIVER OF IMPORTANT RIGHTS THAT SELLER AND/GUARANTOR MAY HAVE AS PARTIES IN DEFAULT UNDER THE TERMS OF THIS AGREEMENT AND/OR GUARANTY, AND ALLOWS GCF TO OBTAIN A JUDGMENT AGAINST EITHER SELLER AND/OR GUARANTOR WITHOUT NOTICE**);

    **d**. Notifying Seller's credit card processor of the sale of Future Purchase Receipts hereunder and to direct such credit card processor to make payment to GCF of all or any portion of the amounts received by such credit card processor on behalf of Seller.

    **e**. Commencing a suit in law and/or equity, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Seller's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy including without limitation GCF's rights of a secured party under the UCC.

**31. Remedies are not Exclusive**. All rights, powers and remedies of GCF in connection with this Agreement set forth herein may be exercised at any time after the occurrence of any Event of Default, are cumulative and not exclusive and shall be in addition to any other rights, powers or remedies provided to GCF by law or equity.

**32. Power of Attorney**. Seller irrevocably appoints GCF and its representatives as its agents and attorneys-in-fact with full authority to take any action or execute any instrument or document to do the following: (A) to settle all obligations due to GCF from any credit card processor and/or account debtor(s) of Seller; (B) upon occurrence of an Event of Default to perform any and all obligations of Seller under this Agreement, including without limitation (i) to protect the value of the Collateral by obtaining the required insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Seller's name on any invoice, bill of lading, or assignment directing customers or account debtors, as that term is defined by Article 9 of the Uniform Commercial Code ("<u>Account Debtors</u>"), to make payment directly to GCF (including providing information necessary to identify Seller); and (v) to file any claims or take any action or institute any proceeding which GCF may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to collection of the Purchased Amount.

## ADDITIONAL TERMS

**33. Seller Deposit Agreement**. Seller shall execute an agreement with GCF that shall authorize GCF to arrange for electronic fund transfer services and/or "ACH" payments of Initial Daily Installments (or Adjusted Daily Installments, as the case may be) from the Approved Bank Account. Seller shall provide GCF and/or its authorized agent with all information, authorizations and passwords necessary to verify Seller's receivables, receipts and deposits into the Approved Bank Account. Seller shall authorize (by executing written authorizations, if required) GCF and/or it's agent to deduct daily the amounts of the Initial Daily Installment (or the Adjusted Daily Installment, as the case may be) to GCF from settlement amounts which would otherwise be due to Seller from electronic check transactions and to pay such amounts to GCF by permitting GCF to withdraw the Initial Daily Installments (or the Adjusted Daily Installments, as the case may be) from such an account. The authorization shall be irrevocable until such time when Seller shall have performed its obligations under this Agreement in full.

**34. Financial Condition**. Seller and its Guarantor(s) authorize GCF and its agents to investigate their financial status and history, and will provide to GCF any bank or financial statements, tax returns, etc., as GCF deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. GCF Seller hereby authorizes GCF to receive from time to time updates on such information and financial status.

**35. Transactional History**. Seller shall execute written authorization(s) to their bank(s) to provide GCF with Seller's banking

Guarantor #1 Initials: [   ]     Guarantor #2 Initials: [   ]

and/or credit-card processing history.

**36. Indemnification.** Seller and its Guarantor(s) jointly and severally, indemnify and hold harmless to the fullest extent permitted by law Approved Processor, any ACH processor, customer and/or Account Debtors of the Seller, its/their officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by any ACH processor, customer and/or Account Debtors of the Seller resulting from (a) claims asserted by GCF for monies owed to GCF from Seller and (b) actions taken by any ACH processor, customer and/or Account Debtor of the Seller in reliance upon information or instructions provided by GCF.

**37. No Liability.** In no event shall GCF be liable for any claims asserted by Seller or its Guarantor under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is hereby knowingly and voluntarily waived by Seller and Guarantor(s).

## MISCELLANEOUS

**38. Modifications: Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties.

**39. Assignment.** GCF may assign, transfer or sell its rights or delegate its duties hereunder, either in whole or in part without prior notice to the Seller. Seller shall not assign its rights or obligations under this Agreement without first obtaining GCF's written consent.

**40. Notices.** Unless different means of delivering notices are set forth elsewhere in this Agreement, all notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective as of the date of receipt or declined receipt.

**41. Waiver Remedies.** No failure on the part of GCF to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**42. Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.

**43. Governing Law, Venue and Jurisdiction.** This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted exclusively in any court sitting in New York State, (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to inconvenience of the jurisdiction or venue. Should a proceeding be initiated in any other forum, each of the parties to this Agreement irrevocably waives any right to oppose any motion or application made by any other party to transfer such proceeding to an Acceptable Forum. Seller and its Guarantor(s) acknowledge and agree that the Purchase Price is being paid and received by Seller in New York, that the Specified Percentage of the Future Receipts are being delivered to GCF in New York, and that the transaction contemplated in this Agreement was negotiated, and is being carried out, in New York. Seller and its Guarantor(s) acknowledge and agree that New York has a reasonable relationship to this transaction.

**44. Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have expired.

**45. Severability.** In case any of the provisions in this Agreement are found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired. Any provision of this Agreement that may be found by a court having jurisdiction to be prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof.

**46. Entire Agreement.** This Agreement embodies the entire agreement between Seller and GCF and supersedes all prior agreements and understandings relating to the subject matter hereof. The Exhibit(s) and Riders to this Agreement are part of this Agreement.

**47. JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. EACH PARTY HERETO ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION AND DISCUSSIONS OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEYS.**

**48. CLASS ACTION WAIVER. EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY, AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR IS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT TO THE CONTRARY); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED**

 Guarantor #1 Initials: [ ✍ ]  Guarantor #2 Initials: [ ✍ ]

1294907-392

THROUGH THE CLASS OR REPRESENTATIVE ACTION.

49. **ARBITRATION.** THE PARTIES ACKNOWLEDGE AND AGREE THAT, PROVIDED THAT NO SUIT, ACTION OR PROCEEDING (INCLUDING WITHOUT LIMITATION FILING OF AN AFFIDAVIT OF CONFESSION OF JUDGMENT) HAS BEEN ALREADY COMMENCED IN CONNECTION WITH ANY MATTER ARISING OUT OF OR RELATED TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT, EACH GCF, SELLER, AND ANY GUARANTOR OF SELLER SHALL HAVE THE RIGHT TO REQUEST THAT ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THE CONSTRUCTION AND INTERPRETATION OF THIS AGREEMENT, ARE SUBMITTED TO ARBITRATION. THE PARTY SEEKING ARBITRATION SHALL FIRST SEND A WRITTEN NOTICE OF INTENT TO ARBITRATE TO ALL OTHER PARTIES, BY CERTIFIED MAIL UPON SENDING OF SUCH NOTICE, A PARTY REQUESTING ARBITRATION MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR NATIONAL ARBITRATION FORUM ("NAF"). EACH SELLER, GUARANTOR AND GCF SHALL PAY THEIR OWN ATTORNEYS' FEES INCURRED DURING THE ARBITRATION PROCEEDING. THE PARTY INITIATING THE ARBITRATION SHALL PAY ANY ARBITRATION FILING FEE, ADMINISTRATION FEE AND ARBITRATOR'S FEE.

50. **Counterparts and Facsimile Signatures**. This Agreement can be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together, shall constitute one and the same agreement. Signatures delivered via facsimile and/or via Portable Digital Format (PDF) shall be deemed acceptable for all purposes, including without limitation the evidentially purposes.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

FOR THE SELLER

By: _____
Name: DAVID SCOTT LETHEM
Title: Owner/Agent/Manager
EIN

FOR THE SELLER

By: _____
Name: MICHAEL C PALLESCHI
Title: Owner/Agent/Manager
EIN

AGREE TO BE BOUND BY THE PROVISONS OF THIS AGREEMENT APPLICABLE TO AND CONCERNING GUARANTOR

OWNER/GUARANTOR #1

By: _____
Name: DAVID SCOTT LETHEM
SSN

OWNER/GUARANTOR #2

By: _____
Name: MICHAEL C PALLESCHI
SSN

GREEN CAPITAL FUNDING, LLC
By:

_____

Name:
Title:

1294907-392

# EXHIBIT A

### PERSONAL GUARANTY OF PERFORMANCE

This Personal Guaranty of Performance (this "Guaranty") is executed as of 11/27/2018, by the undersigned individual(s) whose name(s) and signature(s) appear in the signature box of this Guaranty (individually and collectively, jointly and severally, "Guarantor") for the benefit of **GREEN CAPITAL FUNDING, LLC** ("Buyer").
**WHEREAS:**

    **A.** Pursuant to that Future Receivables Sale and Purchase Agreement (the "Agreement"), dated as of 11/27/2018, between Buyer and the Seller(s) listed below (collectively and individually, "Seller"), Buyer has purchased a portion of Future Receipts of Seller.

        **THE SELLER:**
        **Legal Business Name:** FTE NETWORKS, INC.
        **D/B/A:** FTE NETWORKS

    **B.** Each Guarantor is an owner, officer, or manager of Seller and will directly benefit from Buyer and Seller entering into the Agreement.

    **C.** Buyer is not willing to enter into the Agreement unless Guarantor irrevocably, absolutely and unconditionally guarantees to Buyer prompt and complete performance of all of the obligations of Seller under the Agreement (each such obligation, individually, an "Obligation" and all such obligations, collectively, the "Obligations").

**NOW, THEREFORE**, as an inducement for Buyer to enter into the Agreement, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantor does hereby agree as follows:

**1. Defined Terms.** All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

**2. Guaranty of Obligations.** Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Buyer prompt, full, faithful and complete performance and observance of all of Seller's Obligations; and Guarantor unconditionally covenants to Buyer that if default or breach shall at any time be made by Seller in the Obligations, Guarantor shall well and truly pay or perform (or cause to be paid or performed) the Obligations and pay all damages and other amounts stipulated in the Agreement with respect to the non-performance of the Obligations, or any of them.

**3. Guarantor's Additional Covenants.** The liability of Guarantor hereunder shall not be impaired, abated, deferred, diminished, modified, released, terminated or discharged, in whole or in part, or otherwise affected, by any event, condition, occurrence, circumstance, proceeding, action or failure to act, with or without notice to, or the knowledge or consent of, Guarantor, including, without limitation:

    **a.** any amendment, modification or extension of the Agreement or any Obligation;

    **b.** any extension of time for performance, whether in whole or in part, of any Obligation given prior to or after default thereunder;

    **c.** any exchange, surrender or release, in whole or in part, of any security that may be held by Buyer at any time under the Agreement;

    **d.** any other guaranty now or hereafter executed by Guarantor or anyone else;

    **e.** any waiver of or assertion or enforcement or failure or refusal to assert or enforce, in whole or in part, any Obligation, claim, cause of action, right or remedy which Buyer may, at any time, have under the Agreement or with respect to any guaranty or any security which may be held by Buyer at any time for or under the Agreement or with respect to the Seller;

    **f.** any act or omission or delay to do any act by Buyer which may in any manner or to any extent vary the risk of Guarantor or which would otherwise operate as a discharge of Guarantor as a matter of law;

    **g.** the release of any other guarantor from liability for the performance or observance of any Obligation, whether by operation of law or otherwise;

    **h.** the failure to give Guarantor any notice whatsoever;

    **i.** any right, power or privilege that Buyer may now or hereafter have against any person, entity or collateral.

**4. Guarantor's Other Agreements.** Guarantor will not dispose, convey, sell or otherwise transfer, or cause Seller to dispose, convey, sell or otherwise transfer, any material business assets of Seller outside of the ordinary course of Seller's business without the prior written consent of Buyer, which consent may be withheld for any reason, until receipt of the entire Purchased Amount. Guarantor shall pay to Buyer upon demand all expenses (including, without limitation, reasonable attorneys' fees and disbursements) of, or incidental to, or relating to the enforcement or protection of Buyer's rights hereunder or Buyer's rights under the Agreement. This Guaranty is binding upon Guarantor and Guarantor's heirs, legal representatives, successors and assigns and shall inure to the benefit of and may be enforced by the successors and assigns of Buyer. If there is more than one Guarantor, the obligations of the Guarantors hereunder shall be joint and several. The obligation of Guarantor shall be unconditional and absolute, regardless of the unenforceability of any provision of any agreement between Seller and Buyer, or the existence of any defense, setoff or counterclaim, which Seller may assert. Buyer is hereby authorized, without

Guarantor #1 Initials: [ ]    Guarantor #2 Initials: [ ]

1294907-392

notice or demand and without affecting the liability of Guarantor hereunder, to at any time renew or extend Seller's obligations under the Agreement or otherwise modify, amend or change the terms of the Agreement. Guarantor is hereby notified and consents that a negative credit report reflecting on his/her credit record may be submitted to a credit-reporting agency if the Guarantor does not honor the terms of this Guaranty.

**5. Waiver; Remedies.** No failure on the part of Buyer to exercise, and no delay in exercising, any right under this Guaranty shall operate as a waiver, nor shall any single or partial exercise of any right under this Guaranty preclude any other or further exercise of any other right. The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law or equity. In the event that Seller fails to perform any obligation under the Agreement, Buyer may enforce its rights under this Guaranty without first seeking to obtain performance for such default from Seller or any other guarantor.

**6. Acknowledgment of Purchase.** Guarantor acknowledges and agrees that the Purchase Price paid by Buyer to Seller in exchange for the Purchased Amount of Future Receipt is a payment for an adequate consideration and is not intended to be treated as a loan or financial accommodation from Buyer to Seller. Guarantor specifically acknowledges that Buyer is not a lender, bank or credit card processor, and that Buyer has not offered any loans to Seller, and Guarantor waives any claims or defenses of usury in any action arising out of this Guaranty. Guarantor acknowledges that the Purchase Price paid to Seller is good and valuable consideration for the sale of the Purchased Amount.

**7. Governing Law and Jurisdiction.** This Guaranty shall be governed by, and constructed in accordance with, the internal laws of the State of New York without regard to principles of conflicts of law. Except as provided in Section 10 of this Guaranty, Guarantor submits to the nonexclusive jurisdiction and venue of any state or federal court sitting in New York State or otherwise having jurisdiction over this Guaranty and Guarantor, for resolution of any claim or action arising, directly or indirectly, out of or related to this Guaranty. The parties stipulate that the venues referenced in this Agreement are convenient. The parties further agree that the mailing by certified or registered mail, return receipt requested, of any process required by any such court will constitute valid and lawful service of process against them, without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions. Guarantor acknowledges and agrees that the Purchase Price is being paid and received by Seller in New York, that the Specified Percentage of the Future Receipts are being delivered to Buyer in New York, and that the transaction contemplated in this Guaranty was negotiated, and is being carried out, in New York. Guarantor acknowledges and agrees that it is guaranteeing a New York agreement and transaction. Guarantor acknowledges and agrees that New York has a reasonable relationship to this transaction.

**8. JURY WAIVER. THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS GUARANTY IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.**

**9. CLASS ACTION WAIVER. THE PARTIES WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (II) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.**

**10. ARBITRATION. THE PARTIES ACKNOWLEDGE AND AGREE THAT, PROVIDED THAT NO SUIT, ACTION OR PROCEEDING (INCLUDING WITHOUT LIMITATION FILING OF AN AFFIDAVIT OF CONFESSION OF JUDGMENT) HAS BEEN ALREADY COMMENCED IN CONNECTION WITH ANY MATTER ARISING OUT OF OR RELATED TO THIS GUARANTY AND/OR THE TRANSACTION CONTEMPLATED BY THE AGREEMENT, EACH BUYER, SELLER AND GUARANTOR SHALL HAVE THE RIGHT TO REQUEST THAT ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THE CONSTRUCTION AND/OR INTERPRETATION OF THIS GUARANTY ARE SUBMITTED TO ARBITRATION. THE PARTY SEEKING ARBITRATION SHALL FIRST SEND A WRITTEN NOTICE OF INTENT TO ARBITRATE TO ALL OTHER PARTIES, BY CERTIFIED MAIL. UPON SENDING OF SUCH NOTICE, A PARTY REQUESTING ARBITRATION MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR NATIONAL ARBITRATION FORUM ("NAF"). EACH SELLER, GUARANTOR AND BUYER SHALL PAY THEIR OWN ATTORNEYS' FEES INCURRED DURING THE ARBITRATION PROCEEDING. THE PARTY INITIATING THE ARBITRATION SHALL PAY ANY ARBITRATION FILING FEE, ADMINISTRATION FEE AND ARBITRATOR'S FEE.**

**11. Severability.** If for any reason any court of competent jurisdiction finds any provisions of this Guaranty to be void or voidable, the parties agree that the court may reform such provision(s) to render the provision(s) enforceable ensuring that

the restrictions and prohibitions contained in this Guaranty shall be effective to the fullest extent allowed under applicable law.

**12. Opportunity for Attorney Review.** The Guarantor represents that he/she has carefully read this Guaranty and has had had a reasonable opportunity to, - and to the extend he or she wishes did, - consult with his or her attorney. Guarantor understands the contents of this Guaranty, and signs this Guaranty as his or her free act and deed.

**13. Counterparts and Facsimile Signatures.** This Guaranty may be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same agreement. Facsimile or scanned documents shall have the same legal force and effect as an original and shall be treated as an original document for evidentiary purposes.

**AGREED AND ACCEPTED:**
**OWNER/GUARANTOR #1:**

By: _____

Name: DAVID SCOTT LETHEM
SSN:

**OWNER/GUARANTOR #2:**

By: _____

Name: MICHAEL C PALLESCHI
SSN

**GREEN CAPITAL FUNDING, LLC**
By: _____
Name:
Title:

1294907-392

# RIDER 1

## TO THE 11/27/2018 FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT ("Agreement")

### Between GREEN CAPITAL FUNDING, LLC ("GCF")

### and FTE NETWORKS, INC. d/b/a FTE NETWORKS ("Seller")

### APPLICABLE FEES

**1. Possible Conflicts**.  If there is any conflict or inconsistency between any of the provisions of this Rider and any of the provisions of the 11/27/2018 Future Receivables Sale and Purchase Agreement (the "Agreement") to which this Rider is attached, all such conflicts and inconsistencies shall be resolved in favor of the provisions of this Rider.

**2. Definitions**.  All capitalized terms used in this Rider shall have the meaning set forth in the Agreement unless otherwise indicated herein.

**3. Applicable Fees**.   The parties agree that the Applicable Fees which Seller shall pay to GCF, pursuant to Section 17 of the Agreement shall be as follows:

    a. **Due Diligence Fee:** <u>Up to ten percent (10%) of the Purchase Price</u> (the cost of the due diligence of Seller' business performed by GCF. As a general rule, the Due Diligence Fee varies and depends on the complexity of underwriting required on a business including without limitation, sophistication of Seller's principals, difficulty in ascertaining Seller's receivables and account debtors, sources of Seller's revenue flow, etc.).

    b. **ACH Program Fee**:  _$395.00_  (to cover expense of ACH processing program).

    c. **UCC Fee**:  _$195.00_   (part of filing UCC financing statements and their terminations).

    d. **Wire Fee**:  _$35.00_   (to cover cost of remitting the Purchase Price).

**4. Authorization**.   Seller hereby authorizes GCF to apply a portion of the Purchase Price due to Seller pursuant to the Agreement toward satisfaction of Seller's obligation to pay the Applicable Fees pursuant to Section 17 of the Agreement by deducting the amount of the Applicable Fees from the Purchase Price prior to delivering it to Seller.

**5. No Reduction of Purchase Price**.  Seller hereby agrees that deduction of the Applicable Fees from the Purchase Price shall not be deemed to reduce the Purchase Price.

**Seller and GCF agree that this Rider shall be attached to the Agreement and shall be made a part thereof.**

FOR THE SELLER

By: _____

**Name:** DAVID SCOTT LETHEM

FOR THE SELLER

By: _____

**Name:** MICHAEL C PALLESCHI

Guarantor #1 Initials: [   ]    Guarantor #2 Initials: [   ]

1294907-392

## RIDER 2

### TO THE 11/27/2018 FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT ("Agreement")

### Between GREEN CAPITAL FUNDING, LLC ("GCF")

### and FTE NETWORKS, INC. d/b/a FTE NETWORKS ("Seller")

### PRIOR BALANCE

**1. Possible Conflicts**. If there is any conflict or inconsistency between any of the provisions of this Rider and any of the provisions of the Future Receivables Sale and Purchase Agreement (the "Agreement") to which this Rider is attached, all such conflicts and inconsistencies shall be resolved in favor of the provisions of this Rider.

**2. Definitions**. All capitalized terms used in this Rider shall have the meaning set forth in the Agreement unless otherwise indicated herein.

**3. Prior Balance**. Seller represents and warrants that the following list of its creditors and the amounts that Seller owes its creditors as of the Effective Date of the Agreement is true, correct and complete:

**Creditor 1:**
Name: GREEN CAPITAL FUNDING LLC
Amount Owed to Creditor 1: $398,539.00

**TOTAL PRIOR BALANCE: $398,539.00**

**4. Authorization**. Seller hereby authorizes GCF to apply a portion of the Purchase Price due to Seller pursuant to the Agreement toward satisfaction of Seller's obligation to pay the Prior Balance pursuant to Section 18 of the Agreement by deducting the amount of the Prior Balance from the Purchase Price prior to delivering it to Seller, and to forward the specific amounts owed by Seller to GCF and/or the creditors listed in this Rider.

**5. No Reduction of Purchase Price**. Seller hereby agrees that deduction of the Prior Balance from the Purchase Price shall not be deemed to reduce the Purchase Price.

**6. Indemnification.** Seller hereby indemnifies and holds harmless GCF for any and all damages and losses (including without limitation legal fees and expenses) incurred by GCF as the result of the information set forth in this Rider being untrue or incorrect or incomplete.

**Seller and GCF agree that this Rider shall be attached to the Agreement and shall be made a part thereof.**

FOR THE SELLER

By: _____

**Name:** DAVID SCOTT LETHEM

FOR THE SELLER

By: _____

**Name:** MICHAEL C PALLESCHI

Guarantor #1 Initials: [ ]     Guarantor #2 Initials: [ ]

1294907-392

# RIDER 3

## TO THE 11/27/2018 FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT ("Agreement")

### Between GREEN CAPITAL FUNDING, LLC ("GCF")

### and FTE NETWORKS, INC. d/b/a FTE NETWORKS ("Seller")

### <u>ORIGINATION FEE</u>

**1. <u>Possible Conflicts</u>**. If there is any conflict or inconsistency between any of the provisions of this Rider and any of the provisions of the Future Receivables Sale and Purchase Agreement (the "Agreement") to which this Rider is attached, all such conflicts and inconsistencies shall be resolved in favor of the provisions of this Rider.

**2. <u>Definitions</u>**. All capitalized terms used in this Rider shall have the meaning set forth in the Agreement unless otherwise indicated herein.

**3. <u>Applicable Fees</u>**. The parties agree that the Origination Fee that Seller shall pay to GCF pursuant to Section 19 of the Agreement shall be:
$ 60,000.00

**4. <u>Authorization</u>**. Seller hereby authorizes GCF to apply a portion of the Purchase Price due to Seller pursuant to the Agreement toward satisfaction of Seller's obligation to pay the Origination Fee pursuant to Section 19 of the Agreement by deducting the amount of the Origination Fee from the Purchase Price prior to delivering it to Seller.

**5. <u>No Reduction of Purchase Price</u>**. Seller hereby agrees that deduction of the Origination Fee from the Purchase Price shall not be deemed to reduce the Purchase Price.

**Seller and GCF agree that this Rider shall be attached to the Agreement and shall be made a part thereof.**

FOR THE SELLER

By: _____

Name: DAVID SCOTT LETHEM

FOR THE SELLER

By: _____

Name: MICHAEL C PALLESCHI

 Guarantor #1 Initials: [ ] Guarantor #2 Initials: [ ]

1294907-392

## EXHIBIT B

### ADDENDUM TO
### THE FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT AND GUARANTY

This **ADDENDUM TO THE FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT and GUARANTY (this "Addendum")**, dated 11/27/2018, is entered into by and among **GREEN CAPITAL FUNDING, LLC** ("GCF") and

**Business Legal Name:** FTE NETWORKS, INC.
**D/B/A:** FTE NETWORKS
**Form of Business Entity:** Corporation



**Business Legal Name:** FTE HOLDINGS LLC
**D/B/A:** FTE HOLDINGS
**Form of Business Entity:** LLC

**Business Legal Name:** JUS-COM INC
**D/B/A:** FTE NETWORK SERVICES
**Form of Business Entity:** Corporation

**Business Legal Name:** FOCUS VENTURE PARTNERS IN
**D/B/A:** FOCUS VENTURE PARTNERS
**Form of Business Entity:** Corporation

**Business Legal Name:** BENCHMARK BUILDERS INC
**D/B/A:** BENCHMARK BUILDERS
**Form of Business Entity:** Corporation

**Business Legal Name:** FOCUS WIRELESS LLC
**D/B/A:** FTE WIRELESS SERVICES
**Form of Business Entity:** LLC

("Seller #6").

**Name:** DAVID SCOTT LETHEM          ("Guarantor #1")
**Email:**
**Phone:**
**Title:** Owner/Agent/Manager

**Name:** MICHAEL C PALLESCHI
**Email:**
**Phone:**
**Title:** Owner/Agent/Manager



CASE 0:21-cv-04356-JMB-DTS Document 23-18 Filed 02/25/22 Page 20 of 22

1294907-392

Hereinafter: (i) Seller # 1 is referred to as the "Original Seller"; and (ii) Seller # 2, Seller # 3, Seller # 4, Seller # 5 and Seller # 6 are referred to, individually and collectively, jointly and severally, as the "Additional Seller"; and (iii) the Original Seller and the Additional Seller are referred to, individually and collectively, jointly and severally, as the "Seller."

Hereinafter, Guarantor # 1 and Guarantor # 2 are referred to, individually and collectively, jointly and severally, as the "Original Guarantor."

### W-I-T-N-E-S-S-E-T-H

**WHEREAS**, GCF, the Original Seller and the Original Guarantor entered into that certain FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT, dated 11/27/2018 (the "Agreement"); and

**WHEREAS**, the obligations of the Original Seller under the Agreement are further guaranteed by the Original Guarantor pursuant to the Personal Guaranty of Performance set forth as Exhibit A to the Agreement (the "Guaranty"); and

**WHEREAS**, the parties hereto desire to amend and restate the Agreement by adding the name(s) of the Additional Seller as the parties to the Agreement, as if the Additional Seller were the signatories to the Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the mutual receipts and sufficiency of which is hereby acknowledged, the parties to this Addendum hereby agree to the foregoing and as follows:

    **1.** **Definition**s. All capitalized terms used herein shall have the meaning set forth in the Agreement unless otherwise indicated herein.

    **2.** **Assumption of Obligations by Additional Sellers**. Each Additional Seller, jointly and severally with other Sellers, hereby assumes all of the obligations to be performed on the part of the Original Seller under or in connection with the Agreement and agrees to keep, perform and be bound by all of the terms of the Agreement as if they were the signatories to the Agreement.

    **3.** **No Release from Obligations**. Neither the Original Seller nor the Original Guarantor shall be released from performance of any of their respective obligations under the Agreement and/or the Guaranty, as applicable.

    **4.** **Ratification of the Agreement and Guaranty, as Modified**. Notwithstanding anything to the contrary contained herein, all terms, conditions and covenants of the Agreement and the Guaranty not expressly modified by this Addendum shall remain unchanged and in full force and effect. The parties hereto hereby ratify, adopt, and approve the terms of the Agreement and the Guaranty and confirm that the Agreement and the Guaranty, as herein modified, have been since their inception and are now in full force and effect.

    **5.** **Binding Effect**. The covenants, conditions, provisions and agreements contained herein shall bind and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

    **6.** **Modification**. This Addendum may not be modified orally, and no change or modification shall be binding unless the same is signed by the party against whom such change is to be enforced.

    **7.** **No Other Agreements**. The parties hereto agree that this Addendum represents the complete and final expression of the parties' intent and that no prior or contemporaneous oral or written agreement may be used to modify the terms herein.

    **8.** **Sellers' Obligations are Joint and Several.** Each Seller shall, jointly and severally with other Sellers, be responsible and liable for the representations, warranties, covenants, obligations and liabilities of the Original

1294907-392

Seller under the Agreement.

**9. Guarantors' Obligations are Joint and Several.** Each Original Guarantor shall, jointly and severally with other Original Guarantors, be responsible and liable for the representations, warranties, covenants, obligations and liabilities of the Original Guarantor under the Agreement and the Guaranty.

**IN WITNESS WHEREOF,** the parties hereto have executed this Addendum as of the date first above written.

FOR THE SELLER - FTE NETWORKS, INC., D/B/A FTE NETWORKS, FTE HOLDINGS LLC, D/B/A FTE HOLDINGS, JUS-COM INC, D/B/A FTE NETWORK SERVICES, FOCUS VENTURE PARTNERS INC, D/B/A FOCUS VENTURE PARTNERS , BENCHMARK BUILDERS INC, D/B/A BENCHMARK BUILDERS, and FOCUS WIRELESS LLC, D/B/A FTE WIRELESS SERVICES

By

Name: DAVID SCOTT LETHEM
Title: Owner/Agent/Manager

OWNER/GUARANTOR #1

By

Name: DAVID SCOTT LETHEM
SSN

FOR THE SELLER - FTE NETWORKS, INC., D/B/A FTE NETWORKS, FTE HOLDINGS LLC, D/B/A FTE HOLDINGS, JUS-COM INC, D/B/A FTE NETWORK SERVICES, FOCUS VENTURE PARTNERS INC, D/B/A FOCUS VENTURE PARTNERS , BENCHMARK BUILDERS INC, D/B/A BENCHMARK BUILDERS, and FOCUS WIRELESS LLC, D/B/A FTE WIRELESS SERVICES

By

Name: MICHAEL C PALLESCHI
Title: Owner/Agent/Manager

OWNER/GUARANTOR #2

By

Name: MICHAEL C PALLESCHI
SSN:

**GREEN CAPITAL FUNDING, LLC:**

By: _____
Name:
Title:

1294907-392

Dear Seller,

Thank you for your interest to work with GREEN CAPITAL FUNDING, LLC. We look forward to working with you for as long as you need.

As part of the underwriting process, GREEN CAPITAL FUNDING, LLC will require viewing access to your bank account prior to and during the Future Receivables Sale and Purchase Agreement.. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

Please fill out the form below with the information necessary to access your account.
* Be sure to indicate capital or lower-case letters.

Name of bank: _____ ███████████████████ _____

Bank portal website: _____

Username: _____

Password: _____

Security Question/Answer 1:_____

Security Question/Answer 2:_____

Security Question/Answer 3:_____

Any other information necessary to access your account: _____

_____